**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | | |
|---|---|---|
| RITA CLINTON, | ) | |
| 4504 Stecoah Drive. | ) | |
| Clinton, MD.  20735 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:_____ |
| | ) | |
| RICK PERRY, SECRETARY | ) | |
| U.S. DEPARTMENT OF ENERGY, | ) | |
| 1000 Independence Avenue, S.W., | ) | |
| Washington, D.C. 20585 | ) | **Jury Demanded** |
| | ) | |
| Serve:  JEFFERSON SESSIONS, | ) | |
| Attorney General for the United States | ) | |
|  c/o Designated Representative | ) | |
| United States Department of Justice | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, DC 20530-0001 | ) | |
| | ) | |
| Serve:  JESSIE K LIU, United States | ) | |
| Attorney for the District of Columbia | ) | |
|  c/o Designated Representative | ) | |
| United States Attorney's Office | ) | |
| 555 Fourth Street, N.W. | ) | |
| Washington, DC 20530 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **COMPLAINT**

    **COMES NOW** the Plaintiff Rita Clinton, by and through her undersigned counsel, and

sues Defendant Rick Perry, Secretary, U.S. Department of Energy, for the cause of action stated

as follows:

1

## INTRODUCTORY STATEMENT

1.      Plaintiff Rita Clinton ("Plaintiff" or "Ms. Clinton") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; and 42 U.S.C. § 1981a, for relief from discrimination based on retaliation for engagement prior protected EEO activity and for wrongful termination from her position as Director, Office of Human Capital Policy and accountability, as a member of the Senior Executive Service within Human Capital ("HC").

2.      Defendant Rick Perry, Secretary of the U.S. Department of Energy ("Defendant") discriminated against Plaintiff by wrongfully terminating her employment and by subjecting her to retaliation for her engagement in protected EEO activity during the course of her employment with the U.S. Department of Energy ("DOE").

## PARTIES

3.      Plaintiff Rita Clinton is currently domiciled at 4504 Stecoah Drive, Clinton, Maryland, and is a United States citizen.  At all relevant times, Ms. Clinton was an employee of the U.S. Department of Energy.

4.      Defendant Rick Perry is being sued in his official capacity as the Secretary of the U.S. Department of Energy.

5.      Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

## VENUE

7.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia.  28 U.S.C. § 1391.  Venue is further proper in this district because there is no other district in which this action may otherwise be brought.  *Id*.

8.      Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the U.S. Department of Energy at the 1000 Independence Avenue, S.W., Washington, District of Columbia 20585.

## EXHAUSTION OF REMEDIES

9.      Plaintiff has exhausted all of her administrative remedies related to this case.

10.      On or around February 20, 2018, Plaintiff received the Initial Decision ("Decision") from her Merit Systems Protection Board (MSPB) case where she challenged her termination and asserted the affirmative defense of retaliation under Title VII of the Civil Rights Act of 1964, as amended. The MSPB Decision became final on or about March 27, 2018.

11.      The Decision provided Plaintiff with the right to file a lawsuit in this Court within regarding any claims of discrimination asserted within thirty (30) days from the date the Decision became final.

12.     Plaintiff hereby timely files this action within 30-days after the Decision became final.

## FACTS

13.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

14. Since June 2010, Plaintiff, Rita Clinton worked within the Agency's Office of the Chief Human Capital Officer (HC) as the Director and a member of the Senior Executive Services (SES).

15. In June 2010 Plaintiff served as the Director, Office of Human Resources Services.

16. On October 4, 2015, Complainant's title changed to Director, Office of Corporate Human Resources Operations (HC-30).

17. After her title changed, as HC-30 Director, Complainant was responsible for overseeing the full range of human capital management operational functions to support DOE employees (non-executives) through a blend of servicing strategies accomplished through the Shared Service Centers and HR Advisory Offices located throughout the Department.

18. The responsibility for processing suitability determination cases falls within the chain of command of the HC-30 Director.

19. January 24, 2016 Plaintiff started as Acting Director, Office of Human Capital Policy Accountability and Technology (HC-10).

20. Loretta Collier, was the Director of HC-10 and she was detailed into Plaintiff's within HC-30 in January 2016.

4

21. Ms. Collier, upon being detailed to HC-30 in January 2016, she became responsible for the processing of suitability determination cases and pending action items within the chain of command of the HC-30 Director.

22. In order to process suitability determination cases, an employee must have a Top Secret "Q" clearance.

23. Neither Plaintiff or Ms. Collier possessed a Top Secret "Q" Clearance.

24. Plaintiff, from the point that she became the Director of HC-30 in 2010, would be copied on the suitability emails received in HC-30 for processing.

25. Plaintiff's did not open these suitability emails; she created a folder and she would move the emails to the folder created when they arrived.

26. Mark Petts was the employee in HC-30 in 2015 who was responsible for processing the suitability cases.

27. In July 2015, Mr. Petts left the Agency.

28. In anticipation of his departure, Plaintiff contacted Stephanie Grimes, Director, of Headquarters, Personnel Security Division, and advised that she would be assigning Rashida Jackson and Eryka Johnson to handle the suitability cases.

29. Plaintiff also requested that Ms. Jackson and Ms. Johnson each receive an interim clearance so that they can process the suitability cases until their "Q" Clearances were received.

30. Ms. Jackson and Ms. Johnson each received an email advising that they would be responsible for processing the suitability cases after Mr. Petts departed and each accepted the assignment.

31. Stephanie Grimes requested Plaintiff send her request in writing so that she

could use it to get the interim clearance expedited.

32. Plaintiff sent the request in writing as requested by Ms. Grimes.

33.  Plaintiff had every reason to believe that the interim clearances for Ms. Jackson and Ms. Johnson would be processed and expedited since this was a process she and Ms. Grimes had undertaken numerous times since 2010 and the interim clearances were always issued.

34. There was one instance during the time between 2010 and 2016 where the interim clearance was not issued because during the process Plaintiff discovered that the applicant had falsified the security form.  It was interim security clearance process that revealed that the applicant had falsified information.

35. Ms. Jackson and Ms. Johnson would have been able to process the suitability cases with an interim clearance.

36. January 24, 2016, Plaintiff assumed her detail in HC-10 as the Acting Director. Once doing so, the duties of HC-30 passed to Ms. Loretta Collier, who assumed her duties in HC-30 as the Acting Director.

37. Plaintiff conducted meetings with Ms. Collier to update her on the projects within HC-30, and she discussed the suitability cases with Ms. Collier.

38. Plaintiff had difficulty getting Ms. Collier to attend scheduled meeting to discuss matters in HC-30.

39. Plaintiff's first level supervisor, Ms. Tonya Mackey, did not ask Plaintiff during meetings leading up to her detail whether she had updated Ms. Collier regarding suitability cases.

40. When Plaintiff learned that there were issues with the suitability cases being

processed, she took action to address the matter, even though she was no longer assigned to HC-30.

41. Plaintiff's successor, Loretta Collier, did not undertake to learn the status of suitability cases when she assumed her positon as Acting Director of HC-30 as required.

42. Ms. Collier eventually sent Plaintiff an email and asked her if she had received "87 emails in January" regarding the suitability cases from AU.

43. Plaintiff responded to Ms. Collier and told her she had not received 87 cases in January.

44. A few weeks after receiving Ms. Collier email regarding the 87 suitability cases, Plaintiff was called into a meeting with Ms. Mackey and her second level supervisor, Mr. Ken Venuto on or about December 2, 2016.

45. During the meeting, Plaintiff was asked whether she had received the suitability cases.  Believing that Ms. Mackey was referring to the 87 cases she was asked by Ms. Collier has she received in January the month of January 2016, she responded no.

46. Plaintiff did receive e-mails from AU with pending suitability determination cases between the dates of July 29, 2015 and May 25, 2016, which she filed into an e-mail folder entitled "Personnel Security."  The sum total of those emails over the ten (10) month period was likely 87.

47. Plaintiff believed that she was being asked whether she received 87 emails in one month (January) and this is why she testified that she had not, and if such were the case, her email system would have "crashed" because it could not have handled receiving that many emails.

48. During this same meeting, Plaintiff, Mackey did not clarify her request or inquire further.

49. Plaintiff explained during the meeting with Ms. Mackey and Mr. Venuto that she had sent Mr. Mike Zimmerman, Director of Headquarters Security Operations in the Office of Environment, Health, Safety and Security ("AU") an email asking to speak with him regarding the suitability cases not moving.

50. Plaintiff further advised that she had a conversation with Mr. Zimmerman on November 4, 2016, as a result of sending her email and he agreed to re-send the suitability cases.

51. This request was made to Mr. Zimmerman because Plaintiff had learned that Mr. Eddins was refusing to send the suitability cases to the Human Capital Office for adjudication.

52. Plaintiff was upset about being questioned in the meeting and believed that she was being targeted because she had filed an EEO complaint and she had identified Ms. Mackey and Mr. Venuto as Responsible Management Officials (RMOs).

53. Plaintiff found it remarkable that she was being called into the meeting with Ms. Mackey and Mr. Venuto to address matters dating several months back, but within days of Ms. Mackey and Mr. Venuto being questioned by the EEO counselor regarding the EEO complaint that Plaintiff she filed against the two of them.

54. As a result of the meeting with Ms. Mackey and Mr. Venuto, Plaintiff was charged with one instance of lack of candor and was ultimately removed from federal service.

55. Plaintiff believes that she was charged with a lack of candor and ultimately removed in retaliation for her engaging in prior EEO activity.

56. Plaintiff made initial contact with an EEO Counselor on August, 30, 2013 and filed

her first formal EEO complaint, (DOE Case No. 13-0131-HQ-ME), on January 27, 2014.

57. Complainant filed her second EEO complaint, (DOE Case No. 16-0049-HQ-ME), on March 23, 2016.

58. From January 2013 through January 23, 2016, Complainant's first level supervisor was Kenneth Venuto (age 65), Director of Human Capital Management.

59. From January 24, 2016 through the filing of DOE Case No. 16-0049-HQ-ME on March 23, 2016, Complainant's first level supervisor was Tonya Mackey (age 51), Deputy Chief Human Capital Officer.

60. Both Ms. Mackey and Mr. Venuto were aware of Plaintiff's prior EEO activity before Ms. Mackey Proposed Plaintiff for termination.

61. The Recommending Official, Ms. Ingrid Kolb was also aware of the Plaintiff prior EEO activity before recommending her removal from federal service.

62. Plaintiff is no longer a federal employee, pursuant to a final determination to remove her from her position and the Federal Service issued by Ingrid Kolb, Director, Office of Management, dated July 17, 2017.

63. Plaintiff's removal was effective July 20, 2017.

64. Prior to Plaintiff's removal she was successfully performing the duties of her position at a level acceptable to her employer.

65.    Ms. Clinton, after she complained about the discrimination she was being subjected to, she was subjected to acts of discrimination, including harassment and reprisal and made to work in a hostile work environment, and she was proposed for removal and unfairly removed from her position in retaliation for engaging in prior EEO activity.

66.     Since Ms. Clinton believes that the treatment she received was a violation of her Title VII rights, Ms. Clinton sought relief by complaining internally, as required.

67.     Ms. Clinton now timely files this Complaint for relief from the discriminatory and illegal treatment that she experienced as a result of the Agency's actions and inactions.

## CAUSES OF ACTION

### COUNT ONE
**(Discrimination on the Basis of Reprisal in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

68.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

69.     Plaintiff complained to her supervisors of the unlawful, hostile and discriminatory and retaliatory treatment that she to which she was being subjected.

70.     Since August 2013 through her the filing of this Complaint, Plaintiff regularly made several complaints of disparate treatment and discrimination to her supervisors and the Agency's EEO office about her treatment.

71.     Since Plaintiff's EEO complaints were not resolved and no action was taken to resolve them, Plaintiff filed a formal EEO Complaints, which named her harassers and identified the responsible management officials.

72.     Plaintiff's EEO complaints went to an administrative investigation and are pending final resolution at various levels of the administrative process.

73.     Shortly after her supervisor, Ms. Mackey and Mr. Venuto were interviewed by the EEO counsel after being identified as Responsible Management Officials (RMOs), Plaintiff was brought up on lack of candor charges, and otherwise subjected to discrimination, made to work in a hostile work environment and subjected to retaliation.

74.     Plaintiff began to be treated differently from her similarly situated co-workers and from how she was treated prior to complaining about the disparate treatment and discrimination. Specifically, Plaintiff was proposed for removal and then removed for her position as an SES with the federal government without any progressive discipline and despite not having a disciplinary history.

75.     Similarly situated co-workers (no prior EEO activity) were not subjected to the same adverse treatment or any adverse treatment.

76.     Defendant engaged in reprisal against Plaintiff because she opposed Defendant's discriminatory practices and participated in EEO activity.

77.     The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity.

78.     Plaintiff complained to her supervisor and through her chain of command about her discrimination.  Defendant knew, or should have known, of Plaintiff's participation in protected EEO activity before subjecting her to the aforementioned adverse actions.

79.     As a result of Plaintiff's open opposition to Defendant's discriminatory treatment, Plaintiff was routinely discriminated against and the employer engaged in a persistent pattern of severe or pervasive harassment set forth herein, which created a hostile and offensive workplace.

80.     The adverse treatment that Plaintiff was being subjected to by Defendant was in front of and obvious to her co-workers.

81.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future loss of income, benefits, promotion and promotional

opportunities, career opportunities, medical expenses and costs, and is entitled to all available legal and equitable remedies.

82.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing between 2013 and 2017.

83.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Award compensatory damages;

b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.   Award reasonable attorney fees, costs, and expenses incurred for this action;

e.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

f.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g.   Supervisory training for the supervisors at issue herein;

h.   Award equitable, declaratory, and injunctive relief; and

i.   Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

84.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

85.     Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Order the Defendant to institute a policy and procedure to be implemented against discrimination;

b.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.   Supervisory training for the supervisors at issue herein; and

d.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By:     *Donna Williams Rucker*
        DONNA WILLIAMS RUCKER
          (D.C. Bar No. 446713)
        TULLY RINCKEY PLLC
        815 Connecticut Avenue, N.W.
        Washington, DC 20006
        Office: (202) 349-9830
        Facsimile: (202) 355-1399
        Email: drucker@fedattorney.com

April 26, 2018                          Counsel for Plaintiff